UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LISA A. MENEY,

             Plaintiff,

                        <u>DECISION AND ORDER</u>

                        10-CV-6196L

         v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

              Defendant.
_____

   Plaintiff appeals from a denial of disability insurance benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner.

   On February 13, 2006, plaintiff, then thirty-two years old, filed an application for Supplemental Security Income under Title II of the Social Security Act. Plaintiff alleged an inability to work since January 31, 1999, due to depression and cognitive deficiencies. Her application was initially denied on July 18, 2006. (T. 19). Plaintiff requested a hearing, which was held on June 25, 2008 before Administrative Law Judge ("ALJ") James E. Dombeck. The ALJ issued a decision on September 30, 2008, concluding that plaintiff was not disabled under the Social Security Act. (T. 58-67). Plaintiff requested review by the Appeals Council, which remanded the matter to ALJ Dombeck for additional proceedings -- specifically, a more detailed application of the special technique for evaluation of mental impairments. (T. 68, 76-77, 380). A second hearing was held April 22, 2009. On May 20, 2009, the ALJ issued a second decision, again concluding that plaintiff is not disabled. (T. 19-32). That decision became the final decision of the Commissioner when the Appeals Council denied review on February 4, 2010. (T.

5-7). Plaintiff now appeals. The Commissioner has moved (Dkt. #8) and plaintiff has cross moved (Dkt. #12) for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c). For the reasons set forth below, the Commissioner's motion is granted, plaintiff's motion is denied, and the complaint is dismissed.

## DISCUSSION

To determine whether a claimant is disabled within the meaning of the Social Security Act, the ALJ proceeds through a five-step sequential evaluation. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 CFR §404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two, and determines whether the claimant has an impairment, or combination of impairments, that is "severe," e.g., that imposes significant restrictions on the claimant's ability to perform basic work activities. 20 CFR §404.1520(c). If not, the analysis concludes with a finding of "not disabled." If so, the ALJ continues to step three.

At step three, the ALJ examines whether the claimant's impairment meets or equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4. If the impairment meets or medically equals the criteria of a listing and meets the durational requirement (20 CFR §404.1509), the claimant is disabled. If not, analysis proceeds to step four, and the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or metal work activities on a sustained basis notwithstanding limitations for the collective impairments. *See* 20 CFR §404.1520(e), (f). Where, as here, the alleged disability implicates the plaintiff's mental abilities, the ALJ must assess it in light of the mental demands of work, including understanding, remembering and carrying out instructions, and responding appropriately to supervision, co-workers and work pressures. *See* 20 CFR §416.945(c).

After the plaintiff's RFC has been determined, the ALJ turns to whether the claimant's RFC permits her to perform the requirements of her past relevant work.  If so, the claimant is not disabled.  If not, analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled, by presenting evidence demonstrating that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986)).  *See* 20 CFR §404.1560(c).

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards.  *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002).  Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  "The Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada v. Apfel,* 167 F.3d 770,  774 (2d Cir. 1998)  *quoting  Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir.1997).  Still, "it is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002).

This deferential standard does not extend to the Commissioner's conclusions of law.  *See Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984).  This Court must independently determine if the Commissioner's decision applied the correct legal standards in determining that the plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Townley*,

748 F.2d at 112.  Therefore, this Court is to first review the legal standards applied, and then, if the standards were correctly applied, consider the substantiality of the evidence.  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987) ("[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles").  *See also Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir.1998).

  The ALJ issued a decision of some thirteen pages in length considering plaintiff's claim of disability, and supported each of his conclusions with detailed factual findings.  Upon a full and thoughtful review of the record, including plaintiff's medical and educational records, I believe that the ALJ applied the correct legal standards, and that his finding that plaintiff is not totally disabled is supported by is substantial evidence.

  The ALJ discussed the record in detail.  I believe the evidence supports the ALJ's conclusion that plaintiff, then a thirty-two year old woman with a general equivalency diploma ("GED") and some college course work and with no appreciable work history, was not totally disabled, due to the ALJ's finding at step five that several positions existed in the economy that plaintiff could perform, including but not limited the unskilled positions of assembler (production), general assembler, lens matcher, addresser and table worker.

  In determining plaintiff's RFC, the ALJ considered, *inter alia*, plaintiff's activities of daily living.  The record, including plaintiff's testimony at the hearing, indicates that in addition to attending Monroe Community College ("MCC") part-time, plaintiff shops, takes care of her personal needs and those of at least two of her children who reside with her, prepares meals, does dishes and laundry, pays bills, attends church services, goes to the library and community center, and generally accomplishes all of the tasks necessary to manage her household with little assistance.  (T. 28, 115-123).  Although plaintiff claimed at her hearing that she had discontinued a prior job attempt due to her "disabilities," contemporaneous Social Security and psychiatric

examination records quote plaintiff as telling a claims representative and a consultative examiner that she left work, partly or solely, to care for her children. (T. 28, 107, 207). In light of plaintiff's self-reports of her daily activities and her academic history, I find that the ALJ's determination that her subjective and largely non-specific complaints of total and continued disability were "not credible" was proper and supported by substantial evidence.

The ALJ also examined plaintiff's educational records and the reports of her treating, examining and consulting physicians. His conclusion that plaintiff's claimed mental disabilities do not render her disabled for purposes of the Act is largely consistent with those reports, as described below.

In determining the plaintiff's RFC, the ALJ notably rejected the opinions of plaintiff's longtime treating psychologist, Dr. Keri Barnett ("Dr. Barnett") and her treating psychiatrist, Dr. Patricia Pielnik ("Dr. Pielnik"), declining to afford them controlling weight. It is well-settled that "the medical opinion of a claimant's treating physician is given controlling weight *if it is well supported by medical findings and not inconsistent with other substantial record evidence*." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)(emphasis added). *See* 20 C.F.R. § 404.1527(d)(2). In determining the weight owed to a treating physician's opinion, the Commissioner must consider: (1) the length, nature and extent of the treatment relationship; (2) the frequency of examination; (3) the evidence presented to support the treating physician's opinion; (4) whether the opinion is consistent with the record as whole; and (5) whether the opinion is offered by a specialist. 20 C.F.R. §404.1527(d). The ALJ must then articulate his reasons for assigning the weight that he does to both treating and nontreating physicians' opinions. *See* 20 C.F.R. §404.1527(d)(2); §404.1527(f)(2)(ii); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

In declining to give controlling weigh to the reports of Drs. Barnett and Pielnik, the ALJ noted that their joint report's description of plaintiff's mental impairments appeared to be internally inconsistent, as well as inconsistent with other evidence of record. He also found that

although the record establishes that plaintiff is impaired in the areas of social functioning and maintaining concentration, persistence and pace, the joint report described a higher level of impairment in those areas than that reflected by Dr. Pielnik's treatment notes, other medical evidence, plaintiff's educational records, and the opinions of all of the consultative examiners. (T. 29, 30).

For example, despite stating that plaintiff had a "marked" inability to maintain social functioning and/or concentration, the joint report assigned plaintiff a Global Assessment of Functioning ("GAF") score of 60 out of a possible 100, which indicates only mild to moderate symptoms. The ALJ also found the characterization of plaintiff's cognitive impairments as "marked" was at odds with the fact of plaintiff's completion of her GED and five years of additional course work at Monroe Community College ("MCC"), test results from ARC of Monroe County finding that plaintiff functioned in the borderline range and was capable of a range of tasks and skills, and repeated IQ tests showing borderline intellectual functioning (T.146-149, 162, 171, 172, 177, 184-185). In dismissing the joint report as internally inconsistent and not credible, the ALJ also observed that the report had opined that even a minimal increase in mental demands would cause plaintiff to decompensate, an opinion which was apparently without basis, since the report went on to acknowledge that plaintiff had not experienced any prior episodes of decompensation. (T. 287).

Individual reports by the physicians contained some similar inconsistencies, such as Dr. Pielnik's separate assessment completed January 30, 2009, which stated that although plaintiff's concentration is "poor" and her ability to follow, understand and remember simple instructions and directions was "markedly" limited, plaintiff's memory, insight and judgment were "fair" and she was fully "capable of low stress of simple tasks" and of regularly attending to a routine and schedule. (T. 326-327). Dr. Pielnik appeared to concede that plaintiff was capable of working in some capacity, noting that her emotional and cognitive disabilities would limit her success "in most work environments," but identifying the avoidance of "high paced" and "complex" work as

reasonable accommodations for plaintiff's impairments.  Dr. Pielnik also found that plaintiff was capable of attending college for up to 20 hours per week, and recommended that plaintiff should "be encouraged to continue pursuing her education" at MCC.  (T. 328-329).  While the opinions of non-treating physicians are not entitled to controlling weight, I also note that the assessment of plaintiff's limitations in social functioning and maintaining concentration by her treating physicians expresses a level of limitation more dramatic than that found by agency examining or consulting physicians who evaluated plaintiff or her records prior to the hearing. Plaintiff's limitations in these areas were described by consulting physician M. Cheryl Butensky (T. 211-227) and examining physician Melvin Zax (T. 205-208) only as "moderate."  Moreover, to the extent that plaintiff's ability to "maintain concentration" or maintain social functioning are addressed in Dr. Pielnik's treatment notes, they consistently and uniformly describe her attentiveness as "average" or better, state that plaintiff is both alert and oriented, and rate her thought processes as coherent and logical, with average insight and judgment.  (T. 244-282).

      Given the inconsistencies between some of the conclusions reached by Drs. Pielnik and Barnett and the rest of the record as a whole, including but not limited to treatment notes from Dr. Pielnik and others showing plaintiff to be consistently alert, with normal or average concentration, insight and judgment, and plaintiff's borderline intellectual functioning and demonstrated ability to complete college coursework and manage her household with little assistance, I find that their opinions that plaintiff is totally disabled are not entitled to controlling weight, and were properly rejected by the ALJ.

      With respect to the determination of plaintiff's RFC, the ALJ determined that plaintiff retained the RFC to perform work at all exertional levels, with nonexertional limitations consisting of borderline intellectual functioning, variously described as a "learning disability," and "moderate symptoms" consisting of a flat effect and occasional panic attacks, and moderate

difficulty in social functioning and dealing with coworkers and/or the general public.[1]  (T. 405, 409, 411-413).  Faced with this RFC as a hypothetical, vocational expert Peter Manzi testified that plaintiff could perform a range of "unskilled, simple, assembly-type work, where the person works independently."  (T. 412).  He identified a number of such jobs at the light or sedentary unskilled level which are found in significant numbers in the local economy, including assembler (production), general assembler, lens matcher, addresser and table worker.  (T. 412-415).

Plaintiff alleges that the ALJ's hypothetical failed to adequately account for plaintiff's symptoms, to the extent that his RFC determination failed to account for certain limitations (or described a lesser degree of limitation) identified by Drs. Pielnik and Barnett in certain portions of their reports, and/or failed to credit plaintiff's subjective claims of total disability.  However, as the Court has concluded above, the ALJ's determination of plaintiff's RFC is supported by substantial evidence of record and his decision not to grant controlling weight to the opinions of Dr. Pielnik and Dr. Barnett was not error.

I have considered the remainder of plaintiff's contentions, and find them to be without merit.  Based on the foregoing, I believe the ALJ applied the proper procedure and that his decision is supported by substantial evidence.  I find no reason to modify that decision.

## CONCLUSION

The Commissioner's motion for judgment on the pleadings (Dkt. #8) is granted, and plaintiff's cross motion for judgment on the pleadings (Dkt. #12) is denied.  The Commissioner's

---

[1] I note that although Dr. Pielnik's opinion was appropriately rejected by the ALJ, the plaintiff's RFC, as defined by the ALJ and considered by the vocational expert, is consistent with Dr. Pielnik's opinion that plaintiff's disabilities would best be accommodated through the avoidance of fast-paced or complex work environments.  (T. 328-329).

decision that plaintiff, Lisa Meney, was not disabled is in all respects affirmed, and the complaint is dismissed.

       IT IS SO ORDERED.

                                                _____
                                                DAVID G. LARIMER
                                              United States District Judge

Dated: Rochester, New York
       June 22, 2011.